IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff-Respondent, § | |
| § | |
| V. § | CRIMINAL ACTION NO. H-02-142-7 |
| § | CIVIL ACTION NO. H-05-801 |
| BILLY LOYD WHITE § | |
| § | |
| § | |
| Defendant-Movant. § | |

**MEMORANDUM AND RECOMMENDATION**

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is Movant Billy Loyd White's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 385),[1] Memorandum in Support of § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 386), the United States' Answer and Motion for Summary Judgment (Document No. 390), and Movant's Response to the Government's Motion for Summary Judgment (Document No. 391). After reviewing the parties' submissions, the record of the proceedings before the District Court in the underlying criminal case, and the applicable case law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that the Government's Motion for Summary Judgment (Document No. 390) be GRANTED, that Movant's § 2255

---

[1] Billy Loyd White's Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-05-801 and at Document No. 385 in Criminal Action No. H-02-142. References hereafter will be to the Criminal Document numbers unless otherwise indicated.

Motion to Vacate, Set Aside, or Correct Sentence (Document No.385) be DENIED and that this § 2255 proceeding be DISMISSED.

**I.      Procedural History**

Movant Billy Loyd White ("White") who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C.§ 2255. This is White's first attempt at § 2255 relief.

On March 15, 2002, White, Mark Bates, Water Eugene Fitzpatrick, Robert Froman, Stephen Michael Johnston, Hector Ezeta, and Jayson Anderson were charged in a ten count indictment with charges relating to child pornography. (Document No. 1). On April 12, 2002, a twelve count Superseding Indictment was filed. (Document No. 99). The Superseding Indictment added Eduardo De Los Santos as a defendant. On July 19, 2002, White pleaded guilty to count 9 of the Superseding Indictment pursuant to a Rule 11(e)(1)(A) and (B) written Plea Agreement. (Document No. 180, 181, Transcript of Rearraignment Hearing, Document No. 372). Pursuant to the terms of the written Rule 11(e)(1)(A) & (B) Plea Agreement, White pleaded guilty to count nine, possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(b). He agreed to fully cooperate with the government and acknowledged that his cooperation would not be used to form the basis of a departure under § 5K1.1 of the Sentencing Guidelines, and agreed to waive his right to a direct appeal and to collaterally attack his sentence. The Government, in exchange for White's plea, agreed not to object to a two point downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) or a one point downward adjustment pursuant to U.S.S.G. § 3E1.1(b)(2), and to dismiss the remaining counts at sentencing. As to the

calculation of White's sentence, his right to appeal and right to seek collateral review, the Plea Agreement states:

> 3. The penalty for a violation of Title 18, United States Code, Section 2252A(A)(5)(B) is a maximum prison term of five years, a fine of up to $250,000, and a possible period of supervised release not to exceed three years. The defendant acknowledges and understands that if he should violate the conditions of any period of supervised release that may be imposed as part of his sentence, then the defendant may be imprisoned for up to two years without credit for time already served on the term of supervised release prior to such violation. Further, the defendant is not eligible for parole.
>
> \*\*\*
>
> 8. The defendant understands that the sentence to be imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, the defendant cannot, for that reason alone, withdraw a guilty plea and will remain bound to fulfill all of the obligations under this plea agreement.
>
> 9. The defendant is aware that the defendant's sentence will be imposed in accordance with the U.S. Sentencing Commission *Guidelines Manual*. The defendant nonetheless acknowledges and agrees that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offense to which the defendant pleads guilty. The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Knowing that, the defendant waives the right to appeal the sentence or the manner in which it was determined on the grounds set forth in Title 18, United States Code, Section 3742, or on any ground whatever, except that the defendant may appeal a sentence imposed above the statutory maximum and an upward departure from the sentencing guidelines not requested by the United States. This agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(b).
>
> 10. In agreeing to this waiver, the defendant is aware that a sentence has not yet been determined by the Court. The defendant is also aware that any estimate of the probable sentencing range under the sentencing guidelines that the defendant may have received from the defendant's counsel, the United States or the Probation Office, is a prediction, not a promise, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Realizing the uncertainty in estimating what sentence the defendant will ultimately receive, the

defendant knowingly waives the right to appeal the sentence, except as noted in paragraph nine above, in exchange for the concessions made by the United States in this plea agreement.

\*\*\*

19. The defendant is aware that the United States Constitution and the laws of the United States, including Title 28, United States Code, Section 2255, afford a defendant the right to contest or "collaterally attack" a conviction or sentence after the sentence has become final. Knowing that, the defendant waives his right to contest or collaterally attack his conviction or sentence by means of any post-conviction proceedings.

20. This written agreement constitutes the complete plea agreement between the United States, the defendant, and the defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. The defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily and because he is guilty. Any modifications of this plea agreement shall be valid only as set forth in writing in a supplemental or revised plea agreement signed by all parties. (Document No. 181).

At White's July 19, 2002, Rearraignment hearing, the Court engaged in an extended colloquy to ensure that White understood the charges against him, the maximum penalties, the rights he was waiving, the factual basis of the plea, and the manner in which his sentence would be calculated.[2] (Document No. 180, Transcript of Rearraignment Hearing, Document No.372). In particular, with respect to White's understanding of the plea agreement, including the waiver of his right to a direct appeal and to collaterally challenge his conviction and sentence, and the calculation of White's sentence, the following exchanges took place between White and the Court regarding White's understanding of the plea agreement and the consequences of pleading guilty rather than proceeding to trial:

---

[2] White and his co-defendants, Christopher James Tinney, Mark Bates, Jayson Anderson, Stephen Michael Johnston, and Eduardo De Los Santos, were rearraigned at the same hearing. All references herein are to Mr. White.

The Court: Have each of you received a copy of the indictment pending against you, that is the written charges that have been brought against you in this case?

\*\*\*

The Defendant: Yes, your Honor.

\*\*\*

The Court: Have each of you had an opportunity to go over the indictment and the case in general with your attorney?

\*\*\*

The Defendant: Yes, your Honor.

\*\*\*

The Court: Mr. White, are you fully satisfied with the counsel, representation and advice given to you in this case by Mr. Gillespie as your attorney?

The Defendant: Yes, your Honor.

\*\*\*

The Court: All right, have each of you had an opportunity to read the written plea agreement that you've proposed to enter into this afternoon?

\*\*\*

The Defendant: Yes, your Honor.

\*\*\*

The Court: And have each of you discussed that written plea agreement with your attorney?

\*\*\*

The Defendant: Yes, your Honor.

\*\*\*

The Court: Do each of you feel that you understand everything in that written plea agreement?

\*\*\*

The Defendant: Yes, your Honor.

\*\*\*

The Court: And do any of you have any questions that you would like to ask about the written plea agreement before we continue, or would like to ask your lawyer about it, ask me about it, the prosecutor or anybody else? I want you to just—I'm going to give you an opportunity?

\*\*\*

The Defendant: No, your Honor.

\*\*\*

The Court: I'm going to ask each of you this question. Has anybody made any other or a different promises or assurances to you other than the ones contained in the written plea agreement in an effort to persuade you to enter a plea–a plea of guilty?

\*\*\*

The Defendant: No, your Honor.

\*\*\*

The Court: Does this written plea agreement that each of you have proposed to enter into contain all of the agreements and understandings that you have with the government with, in relation to your plea of guilty this afternoon?

\*\*\*

It contains all of them?

\*\*\*

The Defendant: Yes, your Honor.

\*\*\*

The Court: Has anyone in any way attempted to force you to plead guilty in this case?

\*\*\*

The Defendant: No, your Honor.

\*\*\*

The Court: Mr. White, you are pleading guilty also to– well, you're pleading guilty to Count 9, which is also possession of child pornography, a violation of 18 United States Code, Section 2252A(a)(5)(B).

The penalty for the violation of that statute is imprisonment for not more than five years or a fine, and/or a fine of up to $250,000.

There will be a supervised release for a maximum of three years; and along with that supervised release there will be certain conditions of supervised release that you'll be obliged to follow.

If you fail to [follow] those conditions, you could be put back into prison for up to two years without credit for the time you've already served in prison and without credit for the time you've been on supervised release, and there will also be a special assessment of $100 for the one count.

Do you understand all of those taken together, the prison time, the fine, the supervised release, the conditions of supervised release and the special assessment, those are the maximum possible penalties you're facing as a result of your plea of guilty this afternoon.

The Defendant: Yes, your Honor.

\*\*\*

The Court: And, Mr. White, have you had a chance to discuss with Mr. Gillespie how those guidelines may apply in your case?

The Defendant: Yes, your Honor.

\*\*\*

7

The Court: Do each of you understand that today I do not know what your sentence will be, and I will not know until after a probation officer has done an investigation of this case and has written a presentence report for each of you that will assist me in sentencing. Do you understand that?

\*\*\*

The Defendant: Yes, your Honor.

\*\*\*

The Court: After that report has been written, you, each of you and your attorneys will be given a copy of that report and the government attorneys will also be given a copy of that report; and each of you will be given an opportunity to make any objections you may have to that report.

We will then have a sentencing hearing. And at that hearing, I will rule on any objections that may be made to me, to the presentence report. I would also rule on any motions that may be made, any recommendations that may be made or any other matters that might come to my attention or have some impact on the sentence that you receive.

Do each of you understand that that is how the sentencing process works?

\*\*\*

The Defendant: Yes, your Honor.

\*\*\*

The Court: Do each of you understand at the conclusion of that sentencing hearing, I will be then in a position to determine how the guidelines apply in your case and what your guideline sentence is. Do you understand that?

\*\*\*

The Defendant: Yes, your Honor.

\*\*\*

The Court: Do each of you understand that it could be at the time I pronounce sentence that the sentence I give you is more severe than the one that you and your

attorneys may have estimated that you might get when you were discussing how the guidelines might apply in your case. Do you understand that?

\*\*\*

The Defendant: Yes, your Honor.

\*\*\*

The Court: And do each of you understand that if the sentence I give you is more severe than the one you expect to get that you will not be given an opportunity to withdraw your plea of guilty.

\*\*\*

The Defendant: Yes, your Honor.

\*\*\*

The Court: Do each of you also understand that under some circumstances you or the government would have the right to appeal any sentence I impose, but that by entering into these written plea agreements you, each of you will be waiving and giving up virtually all of your rights to appeal any sentence I impose; and in any event, any right that you would have remaining would be governed by the terms of your written plea agreement.

\*\*\*

The Defendant: Yes, your Honor.

\*\*\*

The Court: And do each of you understand that if you persisted in your plea of not guilty[,] [y]ou would then have the right to a trial by a jury or by a judge; and at that trial you would have the right to the assistance of counsel in your defense, you would have the right to see and hear all witnesses and have them cross-examined in your defense.

You would have the right on your own part to decline to testify unless you voluntarily elected to do so in your own defense, and you would have the right to the issuance of subpoenas, that is compulsory process, to compel the attendance of witnesses to testify in your defense. Do you understand?

\*\*\*

The Defendant: Yes, your Honor.

\*\*\*

The Court: Do each of you also understand that at the trial, if we had a trial, the jury would be told that they must presume that you were innocent until such time, if ever, the government brought them evidence to convince them beyond a reasonable doubt that you were guilty. Do you understand that?

\*\*\*

The Defendant: Yes, your Honor.

\*\*\*

The Court: And do each of you also understand that at the trial, if we had a trial, the jury would be told that you have a right not to testify or put on any evidence, and they will be told that if you decided not to testify or put on any evidence that they, the jury, could not use that against you as some kind of indication or evidence that you were guilty. Do you understand that?

\*\*\*

The Defendant: Yes, your Honor.

\*\*\*

The Court: Do each of you also understand that at the trial, if we had a trial, the jury would be told that they could not expect you to testify or put on any evidence, they could not expect you to explain yourself or to prove your own innocence.

\*\*\*

The Defendant: Yes, your Honor.

\*\*\*

The Court: Do each of you further understand that by entering a plea of guilty, if that plea is accepted by the Court, that you will – that there will be no trial, and you will have waived or given up your right to a trial as well as all the other rights associated with the trial that I've just outlined for you. Do you understand that?

\*\*\*

The Defendant: Yes, your Honor.

\*\*\*

The Court: All right, I'm going to go over with each of you now the essential elements of the crimes that you're pleading guilty to so that I can be sure you understand what it is you're pleading guilty to..

\*\*\*

All right, now, ... each of you is pleading guilty to a count of the indictment charging possession of child pornography, and for each of you, the essential elements of the crime are as follows:

First, that each of you possessed books, magazines, periodicals, films, videotapes, computer disks or other material containing images of child pornography, where the term, quote, "child pornography," closed quote, is limited to include only visual depictions the production of which involved the use of a minor engaging in sexually explicit conduct.

Second, that the images of child pornography had been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or that the images were produced using materials that had been mailed, shipped or transported in interstate or foreign commerce by any means, including by a computer.

And, third, that each defendant knew that he possessed the images and knew or reasonably should have known that the person engaging in sexually explicit conduct and depicted in the images were under 18 years of age.

Do each of you understand that those are the essential elements of the counts that you are pleading guilty to?  Do you understand that those are the essential elements of Count 9?

\*\*\*

The Defendant: Yes, your Honor.

\*\*\*

The Court: All right. Mr. Wynne, I'm going to ask you now to tell me what is the government is prepared to prove if it went to trial in this case based on the evidence.

\*\*\*

Mr. Wynne: Yes, your Honor, with regard to Billy [Loyd] White, the government would prove beyond a reasonable doubt that Yahoo! identified *billyriverrd@netzero.net* as a member of the Candyman Egroup who had joined on December 30, 2000. Netzero identified the person assigned the e-mail address, billyriverrd@netzero.net as Billy White living at 223 River Road[,] Channelview, Texas 77530.

FBI Special Agent Lawrence J. Green confirmed through the records of the Texas Department of Public Safety that White lived at that address and confirmed that Reliant Energy and Southwestern, with Reliant Energy and Southwestern Bell that the utilities and phone service are in his name.

Green also confirmed that the vehicle parked outside the residence was registered to White.

White discontinued his subscription to Netzero on or about January 2, 2001. Special Agent Green executed a search warrant at White's address on March 13, 2002.

After being fully advised of his rights, White confessed to possessing child pornography on his home computer. Special Agent Green took the computer.

The FBI subsequently confirmed that child pornography was found on the computer, including images that had traveled in interstate or foreign commerce of identifiable known minors engaged in sexually explicit conduct as defined in the superseding indictment.

400 images of child pornography were found on White's computer.

Components of White's Abeltek computer on which images of known children engaged in sexually explicit conduct were found or related equipment necessary to operate the computer and to view the images were manufactured outside the state of Texas and therefore traveled in interstate or foreign commerce before they were possessed by White in the Southern District of Texas.

The Court: Mr. White, tell me in your own words what it is you did to commit the crime that you're pleading guilty to this afternoon.

    The Defendant: I downloaded the child pornography off the internet. I did join the Candyman Egroup that I tried to unsubscribe[], and it wouldn't, you know, work. That's when I ended my Netzero subscription.

    I did have child pornography on my computer, however I would like to stipulate also that it had been deleted and had to be reconstructed.

    The Court: Mr. White, this statement that Mr. Wynne just read to us, or read to me, is contained in the written plea agreement, correct?

    The Defendant: Yes, your Honor.

    The Court: And you will be signing that written plea agreement under oath. So may I take it that you don't have any serious quarrel with what it is Mr. Wynne said he can pro[ve]?

    The Defendant: Correct, your Honor.

    ***

    The Court: Mr. White, is that your signature on the written plea agreement?

    The Defendant: Yes, your Honor. (Transcript of Rearraignment Hearing, Document No. 372, pp.10-11, 13-16, 23-24, 26-29, 32, 34-38, 40-42, 58-60).

Prior to sentencing, a Pre-sentence Investigation Report ("PSR") was prepared (Document No. 285), to which White filed written objections.[3] (Document No. 277). Pursuant to the PSR, White's sentence was calculated as follows: (1) In calculating White's base offense level, because White had been convicted of a violation of 18 U.S.C. § 2252(a)(5)(B), U.S.S.G. § 2G2.4(a), and

---

[3] White objected to factual inaccuracies in the PSR, ¶ 10-18. In addition, White objected to his base offense level. According to White, his base offense should have been 15. White objected to the increase to his base offense based on a cross reference to to U.S.S.G. §2G2.4(c)(2). According to White, because he had not joined the Candyman e-group, and had not trafficked in child pornography, the cross reference was inappropriate. In addition, White objected to the two level specific characteristic enhancement pursuant to U.S.S.C. § 2B2.2(b)(1), to the five level distribution enhancement based on U.S.S.G. § 2B2.2(b)(2)(B), and to a four point sadistic or masochistic enhancement based on U.S.S.G. § 2G2.2(b)(3). Finally, according to White, because he had only a minimal role, he should have been given a four level reduction to his offense level.

its cross-reference, U.S.S.G. § 2G2.4(c)(2), direct a base offense level of 17 where there has been trafficking in material involving the sexual exploitation of a minor. (2) Because White possessed material that involved a prepubescent minor or a minor under the age of 12, pursuant to U.S.S.G. § 2G2.2(b)(1), his offense level was increased by 2 levels. (3) Because the offense involved trading in child pornography, pursuant to U.S.S.G. § 2G2.2(b)(2)(B), his offense level was increased by 5 levels. (4) Because the offense involved several images that portrayed sadistic or masochistic conduct or other depictions of violence, pursuant to U.S.S.G. § 2G2.2(b)(3), his offense level was increased by 4 levels. (5) Because a computer was used for the transmission of the material, pursuant to U.S.S.G. § 2G2.2(b)(5), White's offense level was increased by 2 levels. (6) Because White occupied a role between that of a minimal participant and a minor participant in the offense, pursuant to U.S.S.G. § 3B1.2(b), his offense level was decreased by 3 levels. (7) Because White demonstrated acceptance of responsibility and did so in a timely manner, pursuant to U.S.S.G. § 3E1.1(a) & (b), his offense level was reduced by three levels. (6) With an adjusted base offense level of 24, and with a criminal history category of I, White had a guideline sentencing range of 51 to 60 months. (Document No.285). White was sentenced on December 20, 2002, to 51 months' imprisonment, to be followed by a three year term of supervised release. Also, the Court imposed a special assessment of $100, and a fine of $4,000. (Document No. 307, Transcript of Sentencing Hearing, Document No.371, pp. 25-29). Judgment was entered on January 3, 2003. (Document No.317). White appealed his conviction and sentence to the Fifth Circuit Court of Appeals. His counsel filed an *Anders* brief and moved to withdraw. The Fifth Circuit granted counsel's motion to withdraw and dismissed the appeal as frivolous on January 7, 2004. (Document Nos. 378, 379). On March 11, 2005, within one year of his conviction being

14

final, White timely filed a § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Document No. 385), and Memorandum in Support (Document No. 386). In this § 2255 motion, White alleges ineffective assistance of counsel. According to White, his counsel was ineffective for failing to argue that in light of *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2004), he was sentenced under an unconstitutional statute. Also, White alleges counsel was ineffective because he failed to challenge his sentencing enhancements under *Apprendi* and its progeny (*Blakely*); failed to object to the sentencing enhancements in the PSR, and by promising that he would receive a sentence of 22-28 months or probation. In addition, White raises an ineffective assistance of appellate counsel claim based on counsel's filing of an *Anders* brief and not challenging the knowing and voluntary aspect of his guilty plea.

The Government, in response, filed an Answer and Motion for Summary Judgment. (Document No. 390). According to the Government, White's § 2255 Motion to Vacate, Set Aside or Correct Sentence should be dismissed because White, as part of his written Plea Agreement, knowingly and voluntarily waived his right to collaterally challenge his conviction. White has responded to the Government's Motion for Summary Judgment. (Document No. 391).

**II. Discussion**

A defendant's waiver of his statutory right to collaterally challenge his conviction with a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255, like a waiver by a defendant of his right to appeal, is generally enforceable if the waiver is both knowing and voluntary. *United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994) (Enforcing defendant's voluntary and knowing waiver of § 2255); *United States v. McKinney,* 406 F.3d 744, 746-47 & n.5

(5th Cir. 2005) (Enforcing, post-*Booker*, a waiver of appeal right that was signed prior to the issuance of *Booker)*. In addition, such waivers do not "preclude review of a sentence that exceeds the statutory maximum." *United States v. Hollins*, 97 Fed. Appx. 477, 479 (5th Cir. 2004). In the context of a plea agreement waiver, a sentence exceeds the statutory maximum only when it exceeds the maximum allowed by statute. *United States v. Bond*, 414 F.3d 542, 546 (5th Cir. 2005); *United States v. Cortez*, 413 F.3d 502, 503 (5th Cir.), *cert. denied*, 126 S.Ct. 502 (2005). When, however, a defendant alleges that his counsel was ineffective in negotiating a plea agreement, such ineffectiveness claims are not barred by the waiver. *See United States v. White,* 307 F.3d 336, 343 (5th Cir. 2002) ("[i]neffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself."); *United States v. Cockerham,* 237 F.3d 1179, 1187 (10th Cir. 2001) ("[W]e hold that a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver. Collateral attacks based on ineffective assistance of counsel claims that are characterized as falling outside that category are waivable."), *cert. denied*, 534 U.S. 1085 (2002); *DeRoo v. United States*, 223 F.3d 919, 924 (8th Cir. 2000) ("A defendant's plea agreement waiver of the right to seek section 2255 post-conviction relief does not waive defendant's right to argue, pursuant to that section, that the decision to enter into the plea was not knowing and voluntary because it was the result of ineffective assistance of counsel."); *Mason v. United States,* 211 F.3d 1065, 1069 (7th Cir. 2000) (where the ineffectiveness claims raised in a § 2255 motion relate to counsel's performance at sentencing, the defendant's plea agreement waiver of this right to challenge his conviction in

a § 2255 proceeding is enforceable), *cert. denied*, 531 U.S. 1175 (2001).[4] Ineffective assistance of counsel claims, including challenges to counsel's performance at sentencing, which do not relate to the validity of the Plea Agreement and waiver, can be waived. *White,* 307 F.3d at 343. Otherwise, "[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about the process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded." *White,* 307 F.3d at 344.

Here, pursuant to a written Plea Agreement, White waived his right to appeal, including the manner in which his sentence was determined, and waived his right to collaterally attack his plea, conviction and sentence. As discussed above, the Plea Agreement was explicit with respect to the waiver of the right to appeal and to pursue collateral relief. (Document No. 181, ¶ 9, 19). Also, the Plea Agreement was explicit that White's sentence had not been determined by the court and that any estimate of the probable sentence range that White may have received was a prediction, not a promise. (Document No. 181, ¶ 8, 9, 10).

---

[4] There are some other limited situations in which a plea agreement waiver of the right to seek collateral review under § 2255 is not enforceable, such as where the sentence imposed violates the terms of the plea agreement, the sentence is illegal, or the Government has suppressed exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963). *See DeRoo*, 223 F.3d at 923 ("defendants cannot waive their right to appeal an illegal sentence or a sentence imposed in violation of the terms of an agreement"); *United States v. Baramdyka,* 95 F.3d 840, 843 (9th Cir. 1996) ("the waiver of a right to appeal may be subject to certain exceptions such as claims involving a breach of the plea agreement, racial disparity in sentencing among codefendants or an illegal sentence imposed in excess of a maximum statutory penalty"), *cert. denied,* 520 U.S. 1132 (1997); *United States v. Hollins*, 97 Fed. Appx. 477, 479 (5th Cir. 2004) (Waiver does not preclude review of a sentence that exceeds the statutory maximum). None of those circumstances is at issue in this proceeding.

In addition, at his Rearraignment on July 19, 2002, the Court engaged in an extended colloquy to ensure that White was competent to participate in the Rearraignment proceedings, had discussed the plea agreement with counsel and understood the agreement, that no promises had been made to induce his plea, that he understood the offense to which he was pleading guilty, the maximum sentence he faced, and the rights he was giving up by virtue of his guilty plea. The Court also advised White that his sentence could not be determined until a presentence investigation had been completed, and that White could not withdraw his guilty plea if he determined that he did not like the sentence the Court imposed.

Given White's statements on the record, which carry a strong presumption of verity, *Blackledge v. Allison,* 431 U.S. 63, 74 (1977), that he had read and discussed the written Plea Agreement with his counsel, that he understood the statutory and constitutional rights which he was waiving, that he understood his possible range of punishment and how his sentence would be computed, and that he understood that he had waived his right to appeal and to file a post conviction proceeding, White has not shown that his plea was not counseled, knowing and voluntary, and upon this record, White's plea agreement waiver of his right to collaterally attack his conviction with a § 2255 motion is enforceable. White's sentence does not exceed the statutory maximum – that is, the maximum sentence allowed by statute, *see* 18 U.S.C.§ 2252A(a)(5)(B) (maximum term of 5 years' imprisonment), and does not constitute an upward departure from the Sentencing Guidelines. *See United States v. McKinney*, 406 F.3d 744, 746-47 (5th Cir. 2005). In addition, the Fifth Circuit has explicitly held that *Blakely/Booker* claims do not survive the type of Plea Agreement waivers at issue herein. *See e.g, Bond*, 414 F.3d at 546; *Cortez*, 413 F.3d at 503; *United States v. Beaird*, 2005 WL 1767939 (5th Cir. 2005); *United States v. Trigg*, 141 Fed.

Appx. 296, 297 (5th Cir. 2005); *United States v. Armendariz*, 138 Fed. Appx. 686, 687 (5th Cir. 2005). To the extent that White attempts to overcome the plea waiver by alleging ineffective assistance of counsel, the gist of White's claims relate to counsel's performance with respect to sentencing, and, in particular, with White's dissatisfaction with the length of his sentence.

Because White's plea agreement, and waiver of appeal and collateral rights contained therein, were knowingly, voluntarily, and intelligently entered, because White has waived his right to bring a § 2255 motion, and because that waiver is valid and should be enforced, it serves as a bar to the instant § 2255 motion, e.g., *Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000); *Davila*, 258 F.3d at 451-52; *United States v. Nguyen*, 2005 WL 14090 (E.D. La. 2005); *Morua v. United States*, 2005 WL 1745474 (S.D.Tex. 2005) (Hittner, J.); *United States v. Rohmfeld*, 2006 WL 126636 (S.D.Tex. 2006) (Jack, J.), and this § 2255 is subject to dismissal.

### III. Conclusion and Recommendation

Based on the foregoing, it is

RECOMMENDED that the Government's Motion for Summary Judgment (Document No. 390) be GRANTED, and that Movant Billy Loyd White's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 385) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir.

1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 26th day of June, 2006.

_____
Frances H. Stacy
United States Magistrate Judge